## No. 27719

**The Community Hospital Association v. District Court in and for the County of Boulder, State of Colorado, The Honorable Richard W. Dana, District Court Judge and Esther R. Cortez**

· (570 P.2d 243)

Decided September 26, 1977. Rehearing denied October 31, 1977.

Yegge, Hall & Evans, Paul D. Cooper, for petitioner.

Bragg & Dubofsky, P.C., Frank N. Dubofsky, Stephen H. Cook, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

In this original proceeding we were asked to vacate and set aside an order of the respondent court in which the petitioner (the Hospital) was ordered to produce medical records. We issued a rule to show cause. The matter is now at issue, and we discharge the rule.

The respondent Cortez brought an action, which is now pending, against Ruben Brochner, M.D., and the Hospital. She alleged that the defendant physician fraudulently and negligently advised her in November of 1968 that she had a brain tumor which required immediate surgery; that the doctor negligently performed an unneeded craniotomy on her at the Hospital; and that the doctor had held staff surgical privileges at the Hospital on a continuing basis since the summer of 1964.

Respondent Cortez alleges several theories against the Hospital. Underlying these is the contention that the Hospital had sufficient prior information to be put on notice that the defendant physician was an incompetent, overaggressive neurosurgeon with a history of performing unnecessary operations, particularly elective craniotomies.

She has obtained testimony in depositions from other physicians to the effect that these physicians believed or suspected that Doctor Brochner was performing unnecessary brain surgeries at the Hospital. It appears that the doctor operated on 140 patients at the Hospital between 1964 and 1968.

The respondent court ordered the Hospital to produce copies of all pre-operative consultations, operative notes, interpretations of pre-operative x-rays and brain tissue analyses obtained on these 140 patients. The order contained the following:

"1. That all reference on any chart to the name, address, marital status, and occupation or employment of the patient be removed from the file. Any additional information that would tend to identify the patient shall be removed from the file except for age, sex and race. (i.e., place of employment, spouse's name, number of children, ages of children, etc.)

"2. That upon review by Plaintiff's counsel the records will be filed with the Court and sealed by the Court, not to be opened except upon Order of the Court.

"3. That no attempt will be made by any of the attorneys or parties to learn the identity of the patients, or to in any way attempt to contact these patients.

"4. That any information gained as a result of this review will not be communicated to any person not a party to this action, except as may occur

during the Trial of this case, or except in consultation with experts employed by the Plaintiff to review and analyze the information."

The Hospital urges that, since consent has not been obtained from any of the 140 patients, the production order is in violation of the physician-patient privilege statute, which reads:

"A physician or surgeon duly authorized to practice his profession under the laws of this state, or any other state, shall not be examined without the consent of his patient as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient. . . ." Section 13-90-107(d), C.R.S. 1973.

The respondent court stated that it was not persuaded that the spirit or letter of the physician-patient privilege would be violated by compliance with its order.

The court has adequately protected the 140 patients from disclosure of their identity and the surgeries performed upon them. It is the position of the Hospital that, while identities are not to be disclosed, the statute forbids any disclosure of this type of information without the consent of the particular patient. We do not agree with this argument and hold that the purpose of the statute has been achieved by the conditions imposed by the respondent court.

 This statute is in derogation of the common law. It, and many similar statutes in other states, were adopted to achieve the purpose of placing a patient in a position in which he or she would be more inclined to make a full disclosure to the doctor and to prevent the patient from being humiliated and embarrassed by disclosure of information about the patient by his or her doctor. *C. DeWitt, Privileged Communications Between Physician and Patient*, § 9 (1958); *McCormick's Handbook of the Law of Evidence*, § 98 *et seq.* (2d ed. E. Cleary 1972); and VIII *Wigmore on Evidence*, § 2380 *et seq.* (J. McNaughton rev. ed. 1961). It appears from the foregoing authorities that by statutory amendment and judicial interpretation far reaching effects of the physician-patient privilege have been eliminated or limited. The reason for this is that in many instances injustice can be caused by application of the privilege.

We do not have before us the question of admissibility of the papers ordered to be disclosed, and make no indication in that respect. Assuming, however, that these documents are admissible, it is readily conceivable that a prohibition against their production could result in an injustice. We also do not see how this disclosure in any way impinges on the confidential physician-patient relationship the statute was designed to protect.

In *Rudnick v. Superior Court of Kern County*, 11 Cal.3d 924, 523 P.2d 643, 114 Cal. Rptr. 603 (1974), the trial court had denied discovery on the ground that production would be violative of the physician-patient privilege. The California Supreme Court reversed. Footnote 13 of this opinion reads:

"Because the record indicates sporadic and unclear concern by the parties as to the discoverability of patients' names in the context of the physician-patient privilege, we note the following for the guidance of the trial court should it determine to exercise its discretion to protect an absentee holder of the privilege. 'The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments.' (*City & County of S.F. v. Superior Court* (1951) 37 Cal.2d 227, 232, 231 P.2d 26, 28.) Therefore if the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. (*Ascherman v. Superior Court* (1967) 254 Cal. App.2d 506, 62 Cal. Rptr. 547.) If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. (*Marcus v. Superior Court* (1971) 18 Cal. App.3d 22, 95 Cal. Rptr. 545; *Costa v. Regents of Univ. of California* (1953) 116 Cal. App.2d 445, 463, 254 P.2d 85.) *Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege.*" (emphasis added)

*Osterman v. Ehrenworth*, 106 N.J. Super. 515, 256 A.2d 123 (1969), related to interrogatories directed to the defendant-physician in a malpractice action, which interrogatories sought disclosure of names and addresses of patients not parties to the litigation, as well as the nature of their illnesses and treatment provided for each. It was held that the names and addresses of the patients should not be disclosed, but otherwise the interrogatories should be answered.

The inspection of hospital records and patient charts was involved in *Hyman v. Jewish Chronic Disease Hospital*, 15 N.Y.2d 317, 206 N.E.2d 338 (1965). There the Court of Appeals of New York stated: "It is argued that the data as to such experiments on patients is privileged [citing statute] and that the patients have not waived the privilege. Any such confidentiality could be amply protected by inserting in the court's order a direction that the names of the particular patients be kept confidential."

It is significant that the dissent in that case took the same position as the Hospital takes here.

█ Under the conditions imposed by the respondent court, we approve of the disclosure as ordered.

Rule discharged.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.