656 P.2d 1251

Eleanor ZIEGLER, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and the Honorable Robert O. Roylston, a Judge thereof, S.J. DeVito, D.O. and Margarite DeVito, his wife, Joseph Rogers, D.O., and Sheila Rogers, his wife, dba Cardiology Consultants, and Tucson General Hospital, Real Parties in Interest, Respondents.

No. 2 CA–CIV 4503.

Court of Appeals of Arizona, Division 2.

Sept. 15, 1982.

Rehearing Denied Oct. 7, 1982.

Review Denied Nov. 23, 1982.

See also 640 P.2d 181.

Scheff & Botwin by Gregory G. Wasley, Bolding & Zavala, Tucson, for petitioner.

Kimble, Gothreau, Ryan, Nelson & Cannon, P.C. by Timothy L. Ryan, Chandler, Tullar, Udall & Redhair by Richard Davis, Tucson, Marvin Johnson, P.C. by John P. Otto, Phoenix, for real parties in interest.

## OPINION

HOWARD, Chief Judge.

Petitioner is the plaintiff in a pending medical malpractice action in Pima County Superior Court. The real parties in interest, Rogers and DeVito, doctors of osteopathy specializing in cardiology, and Tucson General Hospital, an Arizona corporation which operates an osteopathic hospital in Tucson, are defendants. The basis of petitioner's claim against the doctors was the unnecessary implantation of a pacemaker. Her claim against the hospital was for breach cf its duty to supervise and control the administration of medical services within its facility in that it was aware or should have been aware that the doctors were committing acts of malpractice and misconduct in their treatment of her.

Subsequent to the filing of the complaint, the matter was referred to a medical liability review panel. A.R.S. § 12–567. Prior to the panel hearing, petitioner obtained 24 partial medical charts of previous patients of the two doctors from Tucson General Hospital. These charts were obtained pursuant to a December 10, 1980, order of this court in special action proceedings. The names and addresses of the 24 patients were deleted from the charts to preserve the doctor-patient privilege as ordered by this court.

The 24 partial medical charts were introduced against the hospital in the panel

hearing. Petitioner's expert witnesses testified that 20 of the 24 medical charts represented medical malpractice by reason of unnecessary implantation of pacemakers. The medical liability review panel found for the petitioner and against both doctors, and for the hospital and against petitioner. In April 1981 Judge Robert Hooker was permanently assigned to this case.

Thereafter, the following proceedings occurred. In September 1981 this court declined to accept jurisdiction of a petition for special action filed by the doctors in which they sought an order requiring petitioner to return the 24 charts to the hospital and excluding the charts from the medical malpractice action. Judge Hooker then ordered the doctors to disclose all names on the 24 charts to petitioner whereupon the doctors filed a petition for special action in the Arizona Supreme Court. On October 6, the supreme court entered an order accepting jurisdiction and vacated the superior court direction for disclosure of patients' names and addresses.

On October 22, Judge Hooker ordered (a) that petitioner and defendants provide to the court and opposing counsel a list of names of those patients who had been contacted and who had consented to the use of their medical records and to being called as witnesses; (b) that the doctors provide to the court the names and addresses and means of contacting those patients not contained in the other list; (c) that the parties confer and agree, if possible, on a letter and consent form to be sent from the court to the patients; (d) that the letter and consent form would advise the patients that information from their medical records had been requested for use as evidence at trial, that each patient had the right to assert the physician-patient privilege, that each had the option of refusing to give consent to the use of his or her medical record, that each might consent with the stipulation that his or her name, address and any matters which would disclose the patient's identity be deleted and that the patient could consent to the disclosure of identity and to being contacted or interviewed regarding the possibility of being a witness; (e) that a ruling on the issue of whether the doctors could call any of the patients as witnesses at trial or whether the medical records of the 24 patients would be admissible would be reserved, and (f) that the trial was reset for February 3, 1982.

On October 29, petitioner filed a petition for special action in the supreme court, challenging the October 22 order. The supreme court accepted jurisdiction for the sole purpose of ruling on the portion of the order which required the doctors to provide to the court the names, addresses, and means of contacting the 24 former patients who had not consented to the use of their files and which also required all parties to confer and agree on a letter and consent form to be sent by the court to the patients soliciting their consent to the use of the information in their files. The supreme court, in vacating that portion of the October 22 order stated:

"In our judgment the attempt by the trial court to use the identity of the patient, even to achieve fairness between the litigants, violates the physician-patient privilege.

\*    \*    \*    \*    \*    \*

The challenged order of the respondent court undermines the privilege by having the respondent doctors disclose the identity of the patients they had treated. Disclosure of such information even to the trial court is nevertheless disclosure which is not authorized. The former patients are entitled to be left to their privacy secure in the belief that their confidences, treatment, and records are protected from disclosure." *Ziegler v. Superior Court in and for the County of Pima*, 131 Ariz. 250, 640 P.2d 181, 182 (1982).

On January 25, 1982, Judge Hooker granted defendants' motion in limine to preclude petitioner from using the 24 medical charts at trial. On March 8, he reconsidered and ruled that petitioner could use the records against the hospital but not against the doctors. Judge Hooker subsequently recused himself and the case was permanently assigned to the respondent judge.

A petition for special action was filed in the supreme court by the hospital requesting that, as to it, the March 8 order be vacated. The supreme court declined to accept jurisdiction whereupon petitioner and the hospital each filed a motion for reconsideration before the respondent judge seeking to have Judge Hooker's March 8 order changed. Petitioner had sought to use the medical charts at trial against both the doctors and the hospital. The hospital had sought to preclude their use at trial against the hospital.

The respondent judge ruled in favor of the hospital finding that although the records probably would be material to petitioner's claim against the hospital, the above-quoted language of the supreme court in its opinion of January 15 appeared to apply equally to the claims against both the doctors and the hospital. Counsel for petitioner were ordered to return the records to designated defense counsel. This order is challenged in this special action.

At the conclusion of oral argument, we determined that intervention by special action was appropriate and therefore assumed jurisdiction, indicating that our opinion would follow. We specifically noted that the statement of the supreme court that "... the former patients are entitled to be left to their privacy secure in the belief that their confidences, treatment, and records are protected from disclosure" must be construed in context, i.e., disclosure of the identities of former patients of the doctors. The supreme court did not address the issue of whether A.R.S. § 12–2235 prevents the use of former patients' records against the hospital where each patient's identity is concealed so as to preserve the physician-patient privilege. We therefore vacated the challenged order insofar as the hospital is concerned and specifically ordered as follows:

"1. That all references on any chart to the name, address, marital status and occupation or employment of the patient which have not yet been removed shall be removed from the file. Any additional information that would tend to identify the patient shall be removed from the file except for age, sex and race. (i.e., place of employment, spouse's name, number of children, ages of children, etc.)

2. That upon review by plaintiff's counsel the records will be filed with the court and sealed by the court, not to be opened except upon order of the court.

3. That no attempt will be made by any of the attorneys or parties to learn the identity of the patients, or to in any way attempt to contact these patients.

4. That any information gained as a result of this review will not be communicated to any person not a party to this action, except as may occur during the trial of this case, or except in consultation with experts employed by the plaintiff to review and analyze the information."

■ The respondents, in defense of the ruling challenged in this special action, argue that the opinion of the Arizona Supreme Court is the law of the case. The term "law of the case" is a rule that the decision of an appellate court in a case is the law of that case *on the points presented* throughout all the subsequent proceedings in the case in both the trial and appellate courts, provided the facts and issues are substantially the same as those on which the first decision rested. *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission,* 115 Ariz. 439, 565 P.2d 1300 (App.1977).

■ The only issue addressed and decided by the supreme court, despite the fact that other issues were raised, was the trial court's attempt to require disclosure of the identities of the patients. The charts of the patients, with their identities concealed as agreed upon by the parties, had already been disclosed to the petitioner pursuant to the order of this court on December 10, 1980. Therefore the issue of whether the physician-patient privilege barred disclosure of the charts of other patients, not parties to this litigation, was decided by this court more than one and one-half years ago and is the law of the case. The subsequent superior court order, vacated by the supreme court, required the doctors to disclose the

names and addresses of the patients to the trial court. The effect of this order was a violation of our prior order which had safeguarded against any disclosure of the patients' identities.

When we ordered the trial court to allow disclosure of the medical records of other patients who had undergone pacemaker implantations, we were of the opinion that the records were relevant to petitioner's claim against the hospital. *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976).

█ "... [T]he purpose of the physician-patient privilege is to insure that the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor." *Lewin v. Jackson*, 108 Ariz. 27, 31, 492 P.2d 406 (1972). As one treatise writer points out, however, such privilege in no way aids the ascertainment of truth but rather shuts out the light. He doubts whether the aim of encouraging full and free disclosure between patient and doctor really needs this sort of protection bought at such a price. McCormick, Evidence § 72, p. 152.

█ The courts of this state have recognized that hospitals have assumed certain responsibilities for the care of patients and must meet the standards of responsibility commensurate with this trust. Therefore, hospitals and their governing bodies may be held liable for injuries resulting from negligent supervision of members of their medical staffs. *Tucson Medical Center, Inc. v. Misevch*, supra; *Purcell v. Zimbelman*, 18 Ariz.App. 75, 500 P.2d 335 (1972). If the claim against the hospital is predicated on its negligent supervision of members of the medical staff, an essential factor to be proved by the plaintiff is the hospital's knowledge, actual or constructive. *Purcell v. Zimbelman*, supra. Therefore, medical records of other patients who might have had unnecessary pacemaker implantations are relevant to the notice issue. It is thus readily apparent that a blanket prohibition against examination and use against the hospital of such records would result in an injustice. We believe that the order of this court, set forth above, adequately safeguards the privacy of former patients not parties to this litigation and preserves the spirit of the physician-patient privilege. At the same time it furthers the public interest by insuring that hospitals will more scrupulously supervise the members of their medical staffs and prevent exposure of future patients to medical incompetence. We cannot see how any patient would be inhibited in confiding in his doctor when there is no risk of humiliation and embarrassment, and no invasion of the patient's privacy. This is particularly true when the patient knows that hospitals will more diligently supervise the competence of the medical attention he is receiving.

Other courts have held that confidentiality can be amply protected by concealing the identity of the patients. *Community Hospital Association v. District Court in and For the County of Boulder*, 194 Colo. 98, 570 P.2d 243 (1977); *Rudnick v. Superior Court of Kern County*, 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643 (1974); *Hyman v. Jewish Chronic Disease Hospital*, 15 N.Y.2d 317, 258 N.Y.S.2d 397, 206 N.E.2d 338 (1965); *Osterman v. Ehrenworth*, 106 N.J.Super. 515, 256 A.2d 123 (1969); *Williams v. Buffalo General Hospital*, 28 A.D.2d 777, 280 N.Y. S.2d 699 (1967). But see contra, *Parkson v. Central Dupage Hospital*, 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140 (1982).

In *Rudnick v. Superior Court of Kern County*, supra, the trial court had denied discovery on the ground that production would be violative of the physician-patient privilege. The California Supreme Court reversed, stating in footnote 13 of its opinion:

"Because the record indicates sporadic and unclear concern by the parties as to the discoverability of patients' names in the context of the physician-patient privilege, we note the following for the guidance of the trial court should it determine to exercise its discretion to protect an absentee holder of the privilege. 'The whole purpose of the privilege is to preclude the humiliation of the patient that

might follow disclosure of his ailments.' [citation omitted.] Therefore if the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. [citation omitted.] If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. [citations omitted.] *Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege."* (Emphasis added) 523 P.2d at 650–51.

In *State ex rel. Benoit v. Randall,* 431 S.W.2d 107 (Mo.1968), the Missouri Supreme Court reversed a discovery order which permitted the plaintiff to examine medical records, unmasked, so that he might designate those he desired produced and copied. The court, however, indicated that it might be inclined otherwise if adequate safeguards had been provided. The court quoted from an earlier decision discussing the physician-patient privilege:

" 'On the one hand, it might be so construed as to fritter away the provisions of the law. On the other hand, it might be so literally construed as to work great mischief in the administration of justice. The ultimate object of every judicial inquiry is to get at the truth. Therefore no rule of law standing in the way of getting at the truth should be loosely or mehanically [sic] applied. The application of such law must be with discrimination, so that it may have the legislative effect intended for it, and yet the investigation of truth be not unnecessarily thwarted.' " 431 S.W.2d at 110.

We are not impressed with *Parkson v. Central Dupage Hospital,* supra, relied upon by the respondent hospital. In rejecting plaintiff's argument that the physician-patient privilege would not have been violated because the trial court ordered that the names and identifying numbers of the patients be excluded from the records, the

Illinois court relied on the case of *Argonaut Insurance Company v. Peralta,* 358 So.2d 232 (Fla.App.1978). *Argonaut,* however, was a medical malpractice action against a doctor. The court correctly denied disclosure of the defendant's medical records of strangers because the question was whether or not the doctor, in treating the plaintiff, used the standard of care commensurate with that used in the community.

Of interest is *Reproductive Services, Inc. v. Walker,* 439 U.S. 1307, 1354, 99 S.Ct. 1, 2, 58 L.Ed.2d 16, 61 (1978), which concerned the propriety of discovery of medical records of patients at certain abortion clinics in Texas. Justice Brennan dissolved a prior stay order on the express condition that the parties agree to a protective order insuring the privacy of patients at the applicants' clinics. A renewal application for stay, however, was granted because the order agreed upon by the parties did not constitute such a protective order. See also, *Reproductive Services, Inc. v. Walker,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979).

For the foregoing reasons, we hold that the respondent court erred in excluding from disclosure to petitioner the medical records of the 24 patients to support her claim against the hospital. Such records may be examined under the conditions set forth in the previous order of this court dated June 27, 1982.

BIRDSALL, J., and JACK G. MARKS, Retired Judge, concur.

NOTE: JAMES D. HATHAWAY having recused himself in this matter, Judge JACK G. MARKS, retired, was called to sit in his stead and participate in the determination of this decision.