**Virginia W. PHILLIPS, individually and as Administrator of the Estate of George O. Phillips, Jr., Deceased; Kimberly K. Thompson, individually; and R. David Phillips, individually, Plaintiffs,**

v.

**MEDTRONIC, INC., Defendant.**

**No. 86–4231–R.**

United States District Court, D. Kansas.

Feb. 23, 1990.

Larry G. Karns, Glenn, Cornish, Hanson & Karns, Chtd., Topeka, Kan., for plaintiffs.

Ronald W. Fairchild, Porter, Fairchild, Wachter & Haney, P.A., Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a products liability case with several motions pending. Defendant has filed a motion for sanctions. Plaintiffs have filed a motion to supplement plaintiffs' response to defendant's pending motion for summary judgment. Defendant has filed a motion to review a decision of the Magistrate in this case.

Defendant's motion for sanctions and plaintiffs' motion to file a supplemental response to defendant's summary judgment motion should be considered as a prelude to deciding the summary judgment motion. Before deciding these matters, the background of the case shall be reviewed.

This case questions whether a pacemaker manufactured by defendant and implanted in the late George O. Phillips, Jr. was defective. The "lead" of the pacemaker was explanted from Mr. Phillips after his death. The lead senses heart functions and carries the information back to the pulse generator of the pacemaker. The pulse generator then determines whether an electrical impulse is needed to stimulate the heart.

The lead taken from Mr. Phillips' body was examined first by employees of defendant who have rendered opinions concerning its condition. Plaintiffs' expert regarding the pacemaker, Douglass S. Mead III, was deposed by defendant in August 1987. At that time, the discovery deadline was the end of August. The deadline was subsequently extended to October 12, 1987 and then to November 2, 1987 and later to February 1, 1988. The deadline for filing dispositive motions was also extended with the discovery deadline. The deadline for dispositive motions eventually became February 15, 1988. On December 31, 1987, before the end of the extended discovery period and before the deadline for filing dispositive motions, plaintiff filed a notice of service of written discovery. This discovery included a request for the production of the pacemaker for inspection by plaintiffs' expert.

Defendant filed its summary judgment motion on February 16, 1988 and filed its written response to plaintiffs' requested discovery on February 19, 1988. Defendant objected to production of the lead without a protective order against destructive testing. On April 18, 1988, plaintiffs filed a motion to compel production, which indicated a willingness to agree to a protective order. Defendant responded to the motion to compel with several arguments. Defendant asserted that: plaintiffs were attempting to reopen discovery; plaintiffs' discovery efforts were untimely; the production of the lead should have been done prior to plaintiffs' expert's deposition and defendant's summary judgment motion; and a protective order should be entered if production of the lead was ordered.

On September 19, 1988, the discovery deadline was extended to November 11, 1988. On September 27, 1988, the Magistrate rejected most of defendant's arguments regarding the production of the lead, noting that the request for production was made before the close of discovery. Production of the lead was ordered within 30 days upon the condition that there would be no destructive testing. Plaintiffs were ordered to return the lead within 30 days after production.

Defendant produced the lead on November 1, 1988. Plaintiffs' expert inspected the device from November 27–29, 1989. The lead was returned to defendant on December 5, 1988.

On July 17, 1989, plaintiffs' expert rendered a short report regarding the results of his inspection of the lead. On August 25, 1989, plaintiffs sought leave to supplement the response to defendant's summary judgment motion on the basis of plaintiffs' expert's new report. Plaintiffs explained

the delay in the making of the report by stating that plaintiffs' expert had been out of the country on other business. At the same time, plaintiffs apparently served defendant with a supplemental response to defendant's interrogatory regarding the substance or basis of the plaintiffs' expert's opinion.

Defendant filed a motion for sanctions against plaintiffs on September 5, 1989. The motion argues that the updated response to defendant's interrogatory is unreasonable and that plaintiffs violated the pretrial order by extending discovery. Defendant requests this court: to strike and exclude from evidence plaintiffs' supplemental response to defendant's interrogatory; to disallow plaintiffs' motion to supplement plaintiffs' response to the summary judgment motion; and to tax costs and fees against plaintiffs for the effort expended as a result of plaintiffs' alleged failure to comply with the orders of the court and the federal rules of practice.

Before examining the case authority cited in support of defendant's motion for sanctions, a capsule summary of arguments and strategies employed by both sides upon the summary judgment motion might be helpful. The deceased, George Phillips, had the pacemaker and lead implanted on March 11, 1983. Several subsequent tests or checks upon the device showed the device operating normally. On September 20, 1984, Mr. Phillips was found unconscious at home and was taken by ambulance to St. Francis Hospital in Topeka. In the evening, he was transferred to the Topeka Veterans Administration Hospital. Commencing about 3:15 a.m. on September 21, 1984, Mr. Phillips began experiencing a series of ventricular tachycardias leading to ventricular fibrillation. At 5:40 a.m., Mr. Phillips was pronounced dead.

Plaintiffs rely upon the following evidence and arguments, among others, to support their claims. The nurses attending to Mr. Phillips at the VA Hospital thought the pacemaker was firing at improper intervals and may have induced the episodes of tachycardia and fibrillation. Drs. Holmsten and Maldonado, who worked on Mr. Phillips, attached credence to the nurses' reports. Dr. Holmsten ordered a surgeon to come to the hospital to remove or disconnect the pacemaker. Mr. Phillips died before this could happen. Dr. Holmsten also listed pacemaker malfunction as a cause of death. Dr. Holmsten has subsequently stated in an affidavit that he still believes pacemaker failure was the most probable cause of death. However, Dr. Holmsten never examined the pacemaker or the lead and cannot identify a defect in the device.

Mr. Mead, plaintiffs' expert on the pacemaker, is not a medical doctor. He is a biomedical engineer who works for an organization which tests medical devices. He is familiar with the operation of the model of pacemaker and lead implanted in Mr. Phillips and with the literature and history of the devices. This history includes a recall by the Food and Drug Administration. After reviewing the nurses' testimony in conjunction with the literature on the devices, Mr. Mead has stated that the lead implanted inside Mr. Phillips appears to have been defective as a result of environmental stress cracking. This cracking of the insulation in the lead can cause intermittent electrical shorts which could produce improper pacing. Mr. Mead initially reached these conclusions without inspecting the lead explanted from Mr. Phillips.

Defendant's summary judgment motion emphasizes the absence of documentary evidence that the pacemaker or lead malfunctioned. In fact, the tests and checks performed prior to Mr. Phillips' death indicated that the pacemaker was operating perfectly. The motion also stresses that neither Dr. Holmsten nor Mr. Mead examined the lead explanted from Mr. Phillips. Two persons employed by defendant did examine the lead in question and did not conclude it was defective, although cracking in the insulation was detected. They also concluded there were no electrical shorts in the lead, although plaintiffs contend, with the support of Mr. Mead, that the test for shorts was improperly conducted. Defendant contends the nurses attending to Mr. Phillips were merely speculating as to the cause of the trachycardia and

fibrillation. Defendant further asserts there are many other causes, including heart attack, which cannot be ruled out. Defendant also argues that other factors, unrelated to a manufacturing or design defect, may cause a lead or pacemaker to malfunction.

Now, after the filing of the summary judgment motion, Mr. Mead has inspected and tested the lead explanted from Mr. Phillips. Plaintiffs believe this inspection and test supports Mr. Mead's previous opinion. Because Mr. Mead's report was produced months after the end of the discovery period, defendant is crying foul, however.

Defendant's reaction comes as no surprise after production of the lead was compelled by the U.S. Magistrate, over defendant's prior objection, shortly before the end of the extended discovery period, but after defendant's summary judgment motion was filed. Defendant argued that the motion to compel should not be granted because Mr. Mead's deposition had been taken when he had not examined the lead, and because defendant had already filed a summary judgment motion premised on the fact that Mr. Mead had not examined the lead. Nevertheless, production of the lead was ordered. Plaintiffs had thirty days to inspect the lead after it was produced. The lead was produced on November 1, 1988. The close of discovery was November 30, 1988. It is obvious that any evidence produced from the inspection of the lead would post-date defendant's summary judgment motion. It is also apparent that any report produced by virtue of the inspection would probably be produced after the close of discovery. Certainly, no requirement was made that any report be produced prior to the close of discovery. No deadline at all was placed on the making of a report. It is also plain that the inspection might produce new grounds or a new basis for Mr. Mead's opinion.

■ In sum, while the delay in making the report may have come as a surprise, certainly the production of the report and the supplementation of the answer to defendant's interrogatory should have been no surprise to defendant. It was the foreseeable outcome of the Magistrate's rulings. Nor does the court find the delay in producing the report itself to be so prejudicial to defendant that defendant's motion for sanctions should be granted. This is not a matter of surprise on the eve of trial. Nor is it a matter where a new expert has been named or a significantly different opinion has been rendered. Mr. Mead's opinion appears to be substantially the same as it was prior to his inspection of the lead. His inspection of the lead simply provides some confirmation of his previously stated opinion regarding the lead.

Defendant has cited three cases in support of sanctions in this matter: *Ferrara v. Balistreri*, 105 F.R.D. 147 (D.Mass.1985); *Bowe v. United States*, 574 F.Supp. 196, 197 (E.D.Wis.1983); *Tabatchnick v. G.D. Searle & Co.*, 67 F.R.D. 49 (D.N.J.1975). Each of these cases involves a violation of a direct court order concerning the naming of expert witnesses or the answering of interrogatories concerning expert witnesses. This case is distinguishable because plaintiffs are not naming a new expert witness or violating a specific order regarding the supplementation of answers to defendant's interrogatories. Furthermore, unlike *Ferrara* and *Tabatchnick*, this is not a situation where a new expert or new descriptions of expert testimony are being offered on the eve of trial.

In sum, the inspection of the lead by plaintiffs' expert at the eleventh hour of the discovery period was approved by the U.S. Magistrate. It must have been contemplated that the inspection would probably lead to a report and a new, if not substantially different, basis for the expert's opinion. It surely was considered by the Magistrate that the expert's deposition had already been taken and that defendant's summary judgment motion had already been filed. We cannot conclude the pretrial order or the federal rules of discovery were violated simply because the inspection took place, a report was made, and plaintiffs have sought to supplement an answer to defendant's interrogatories. Nor do we believe the passage of several

months between the date of inspection and the attempt to supplement requires sanctions against plaintiffs. The delay in writing the report does not appear to have been prejudicial to defendant. Nor has the delay violated a specific order of the court. Accordingly, defendant's motion for sanctions shall be denied, and plaintiffs shall be permitted to supplement their response to defendant's summary judgment motion.

Under FED.R.CIV.P. 56, summary jugment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

A party opposing a properly supported motion for summary judgment can-

not simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510–11. A mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact and to avoid summary judgment. *Id.* at 252, 106 S.Ct. at 2512. "In essence ... the inquiry ... is ... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided [or so lacking] that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; see also, *Celotex Corp. v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

Defendant's main argument for summary judgment is that plaintiffs cannot produce evidence such that a reasonable jury could find that the pacemaker was defective or that it caused the death of Mr. Phillips. The court has studied the pleadings carefully. Examining the evidence, including that discussed above, in a light favorable to plaintiffs, the court believes there is sufficient evidence to support a plaintiffs' verdict by a jury. In the court's opinion, a jury could conclude from the evidence that plaintiffs' contentions regarding defect and causation were more probably true than not true.

Defendant has also argued for summary judgment against plaintiffs' failure to warn claim on the grounds that a warning to Mr. Phillips' doctors, rather than to Mr. Phillips himself, would be sufficient. See *Brooks v. Medtronic, Inc.*, 750 F.2d 1227 (4th Cir. 1984). Plaintiffs contend that a warning should have been given directly to Mr. Phillips, but that, in any case, the warning given to physicians was inadequate. Defendant has not rebutted plaintiffs' charge that the warning to physicians was inadequate. The court believes an adequate warning to physicians would satisfy defen-

dant's duty in this case. However, the adequacy of defendant's warning cannot be resolved at this stage. Therefore, summary judgment cannot be rendered against plaintiffs' failure to warn claim.

■ The court turns its attention to defendant's motion to review a ruling of the U.S. Magistrate. On September 27, 1988, the Magistrate held that defendant must produce documents and answer interrogatories concerning claims or lawsuits involving the pacemaker lead. Defendant had argued that the documents and information were protected from production by the physician-patient privilege. The Magistrate concluded, however, that the privilege could not be asserted by defendant. Defendant asked for reconsideration of this order, seeking to delete the names of persons making claims. In an order dated October 27, 1988, the Magistrate held:

> After weighing the competing interest of the parties the court finds the identities of the parties should be revealed but only on the condition that they be maintained under seal, in confidence, and used only in the context of this litigation. Without leave of court plaintiff shall not disclose the identities of these customers to persons other than plaintiff's attorneys, their employees, and retained experts.

Upon the motion for review, defendant seeks to withhold information leading to the identity of individuals who have filed claims with defendant which did not result in the commencement of a lawsuit. Defendant argues that revealing the names of heart pacemaker patients or releasing information leading to the identification of these individuals would constitute an undue invasion of their right of privacy and could subject them to undue annoyance, embarrassment and humiliation. Again, defendant invokes the physician-patient privilege.

Under the Federal Rules of Evidence, Rule 501, Kansas law should provide the rule of decision on the privilege issue raised in this case. Kansas law recognizes a physician-patient privilege against the disclosure of information confidentially communicated by a patient to a physician where there is a reasonable belief that the communication was necessary or helpful to diagnosis or treatment and where the holder of the information is a person to whom disclosure was made because it was reasonably necessary for the accomplishment of the purpose for which the information was transmitted. K.S.A. 60–427(b).

Kansas courts have recognized that even though the patient, or the patient's legal representative or guardian, is the sole "holder of the privilege," a court should nevertheless consider the application of the privilege when the patient is not represented. *Wesley Medical Center v. Clark,* 234 Kan. 13, 669 P.2d 209, 215 (1983). In other cases, third parties, such as the defendant in this case, have asserted, and courts have applied, the physician-patient privilege when the third parties are necessary recipients of the communication. *Harris v. Upjohn Co.,* 115 F.R.D. 191 (S.D.Ill.1987) (patient names redacted from adverse drug reaction reports held by defendant drug company); *Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101 (S.D.Ohio 1982) (plaintiff's employer may assert privilege against disclosure of complaints made to company doctor); *Ziegler v. Superior Court,* 134 Ariz. 390, 656 P.2d 1251 (App.1982) (defendant hospital ordered to produce files of other pacemaker patients with identity of patients deleted); *Rudnick v. Superior Court,* 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643 (1974) (*en banc*) (defendant drug manufacturers may raise physician-patient privilege to bar discovery of adverse drug reaction reports—trial court on its own motion, in its discretion, may protect the privilege of an absent patient); *Community Hospital Ass'n v. District Court,* 194 Colo. 98, 570 P.2d 243 (1977) (*en banc*) (hospital directed to produce records of surgery on patients other than plaintiff where identity of the patients is protected); *Parkson v. Central DuPage Hospital,* 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140 (1982) (hospital permitted to assert physician-patient privilege in attempt to bar discovery of adverse drug reaction reports of nonparty patients); *State ex rel. Benoit v. Randall,* 431 S.W.2d 107 (Mo.1968) (*en banc*) (hospital asserts privilege on behalf of patients).

After considering these cases and the *Wesley Medical Center* case, the court believes the Magistrate's ruling is contrary to law to the extent it requires the disclosure of names of patients who made complaints to physicians which were passed along in confidence to defendant, when such disclosure to defendant was necessary to accomplish the purpose for which the physicians were consulted. Claims or complaints made directly to defendant by a patient would not be covered by the physician-patient privilege.

In sum, the court orders that defendant not be compelled to disclose the names of patients who made complaints to physicians which were passed along in confidence to defendant when such disclosure to defendant was necessary to accomplish the purpose for which the physicians were consulted, and when these complaints did not lead to litigation. Otherwise, the Magistrate's ruling is affirmed.

In conclusion, defendant's motion for sanctions is denied, and plaintiffs' motion to supplement their response to defendant's summary judgment motion is granted. Defendant's summary judgment motion is denied. Defendant's motion to review the order of the U.S. Magistrate is granted upon the terms set out in this opinion.

IT IS SO ORDERED.