7 P.3d 124 (2000)
198 Ariz. 115
C.B., Patient "1," Patient "2," Patient "3," Patient "4," non-party patients, Petitioners,
v.
Hon. Charles SABALOS, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF PIMA, Respondent, and
Jane Roe, an individual woman; Sandra Mattson, Ph.D., a single woman; Donald Garland, M.D., and Dawn Garland, husband and wife; Wesley McEldon, a single man; Edward Gentile and Deborah Gentile, husband and wife; Hospital Corporation of America dba Sonora Desert Hospital; and Charter Hospital Of Tucson, Inc., an Arizona corporation, Real Parties in Interest.
Donald Garland, M.D., and Dawn Garland, husband and wife, Petitioners,
v.
Hon. Charles Sabalos, Judge of the Superior Court of the State of Arizona, In and For the County of Pima, Respondent,
Jane Roe, an individual woman; Sandra Mattson, Ph.D., a single woman; Wesley McEldon, a single man; Edward Gentile and Deborah Gentile, husband and wife; Hospital Corporation of America dba Sonora Desert Hospital; and Charter Hospital of Tucson, Inc., an Arizona corporation, Real Parties in Interest.
Sandra Mattson, Ph.D., a single woman, Petitioner,
v.
Hon. Charles Sabalos, Judge of the Superior Court of the State of Arizona, In and For the County of Pima, Respondent, and
Jane Roe, an individual woman; Donald Garland, M.D., and Dawn Garland, husband and wife; Wesley McEldon, a single man; Edward Gentile and Deborah Gentile, husband and wife; Hospital Corporation of America dba Sonora Desert Hospital; and Charter Hospital Of Tucson, Inc., an Arizona corporation, *125 Real Parties in Interest.
Nos. 2 CA-SA 00-0048, 2 CA-SA 00-0049, 2 CA-SA 00-0053.
Court of Appeals of Arizona, Division 2, Department B.
June 13, 2000.
Arizona Center for Disability Law By Leslie J. Cohen and Dena Rosen Epstein, Phoenix, Attorneys for Petitioners Non-Party Patients.
Chandler, Tullar, Udall & Redhair By Peter Akmajian and Dev K. Sethi, Tucson, Attorneys for Petitioners Garland.
Renaud, Cook & Drury, P.A. By William W. Drury, Jr., and Carol Romano, Phoenix, Attorneys for Petitioner Mattson.
Lynne M. Cadigan and Kim E. Williamson, Tucson, Attorneys for Real Party in Interest Jane Roe.
Law Offices of Arnold and Polk, P.C. By Charles Arnold, Jay Polk, and John H. Barron III, Phoenix, Attorneys for Amici Curiae AzCLU, Mental Health Association of Arizona, and the Arizona Alliance for the Mentally Ill.

OPINION
ESPINOSA, Chief Judge.
¶ 1 Petitioners in these three consolidated special actions challenge the respondent judge's order compelling disclosure of redacted mental health records of certain non-party patients in the underlying medical malpractice action. The plaintiff in that action claims she was negligently diagnosed as suffering from multiple personality disorder and falsely led to believe that she had been a victim of satanic or ritual abuse. The defendants include psychiatrist Donald Garland and psychologist Sandra Mattson, who, along with the non-party patients, are the petitioners in these special actions. Because an appeal could not rectify any damage that may result from the compelled disclosure of the patients' records, Ulibarri v. Superior Court, 184 Ariz. 382, 909 P.2d 449 (1995); Ziegler v. Superior Court, 134 Ariz. 390, 656 P.2d 1251 (1982), and because we find the respondent judge abused his discretion in compelling the production of the mental health records, we accept jurisdiction and grant relief. See Ariz. R. Special Actions 1 and 3, 17B A.R.S.

*126 Background
¶ 2 In March 1998, real party in interest Jane Roe filed a complaint against Garland, Mattson, Sonora Desert Hospital, Tucson Psychiatric Institute, and others, alleging she had been misdiagnosed and negligently treated. The treatment included hypnosis designed to facilitate her recovery of blocked memories and several periods of hospitalization. Roe contends that while hospitalized, she participated in group therapy sessions with other women who, like her, had been diagnosed as suffering from and were being treated for dissociative disorders. Roe served discovery requests on the defendants, seeking disclosure of "all patients treated by you for multiple personality disorder or dissociative disorder, stating (without revealing or identifying the names)" certain details about their treatment. After Garland and Mattson objected on grounds of relevance and privilege, Roe filed a motion to compel the defendants to produce the mental health records of the defendants' non-party patients who had been diagnosed and/or treated by the defendants for multiple personality disorder and/or satanic or ritual abuse. Roe's motion recognized that "precautions [should be] instituted to ensure that any records obtained this way are appropriately redacted to protect the non-party patients' identity." Mattson and Garland sought protective orders to prevent such disclosure. The respondent judge granted the motion to compel and ordered Garland to produce the following:
no more than 30 files of patients with satanic abuse or [who] have suffered from Multiple Personality Disorder symptoms with appropriate redaction to conceal the identity of the patients within 10 days of this date. The plaintiff shall select no more than 5 former patients for potential deposition for Rule 404(b)[, Ariz. R. Evid., 17A A.R.S.,] witnesses. Within 10 days after any deposition of any Rule 404(b) witness, the plaintiff shall select 3 potential witnesses by filing other act evidence under Rule 404(b).
The defendants filed a motion for reconsideration, which the respondent denied. However, the respondent modified his previous order by entering a new one, which provided as follows:
IT IS THE ORDER OF THE COURT that Dr. Garland shall provide to the plaintiff no more than 30 patient files diagnosed with satanic abuse and/or suffering from Multiple Personality Disorder with appropriate redaction within 10 days, and Dr. Mattson shall provide within 10 days no more than 10 files of patients diagnosed or treated for satanic abuse and/or suffering Multiple Personality Disorder with appropriate redaction to conceal the identity of the patients.
The second order also alluded to future depositions and trial testimony of the disclosed non-party patients. It is from this order that petitioners seek special action relief.

Discussion
¶ 3 The parties do not dispute that a patient's medical records are confidential and are protected from discovery by statute. See A.R.S. §§ 12-2235, 12-2282(A), 32-3283, and 32-2085. Nor do they dispute that courts have only pierced the statutory veil of privacy in those isolated instances in which the trial court has concluded that the medical records of non-parties were relevant to the litigation and, with proper redaction, the identity of the non-parties would not be disclosed. See Ziegler (permitting discovery of portions of medical charts of twenty-four non-party patients of defendant cardiologists in an action against them and hospital for unnecessary implantation of heart pacemaker); cf. Gasiorowski v. Hose, 182 Ariz. 376, 897 P.2d 678 (1994) (finding admissible in malpractice action against anesthesiologist evidence of other episodes in which he had difficulty with same procedure on other patients). However, there are no Arizona cases resolving the question of whether mental health treatment records should be held strictly confidential or subject to discovery in accordance with the precautions specified in Ziegler.
¶ 4 In Ziegler, this court concluded that non-party patients' medical records may be subject to limited discovery in spite of the statutory privilege if certain precautions are taken: (1) all references to the name, address, *127 marital status, occupation, or employment of the patient are removed; (2) after review, the records are filed with the court and not opened absent court order; (3) no efforts are made to discover the identity of the patients or to contact them; and (4) information learned from the records is not communicated to a non-party, except to experts and during trial. We note that although Jane Roe told the trial court she would be willing to follow the Ziegler requirements for discovery, the respondent court declined her request for that protection and, instead, ordered only "appropriate redaction."
¶ 5 Other jurisdictions have likewise concluded that medical records of a defendant's non-party patients may be discovered where identifying information is deleted. Cochran v. St. Paul Fire & Marine Ins. Co., 909 F.Supp. 641 (W.D.Ark.1995) (hospital's medication incident report discoverable where non-party patients' identification deleted); Community Hosp. Ass'n v. District Court, 194 Colo. 98, 570 P.2d 243 (1977) (copies of medical records of 140 surgical patients of defendants surgeon and hospital ordered produced where records redacted to eliminate names, addresses, marital status, and occupation or employment of patients and to be filed with the court and sealed); Amente v. Newman, 653 So.2d 1030 (Fla.1995) (medical records of physician's obese obstetrics patients during two-year period allowed to be discovered where privacy and confidentiality rights protected by redacting all identification information); Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358 (Ind.1992) (discovery permitted of redacted medical records of non-party surgical patients where claim was based on alleged unnecessary surgeries); State ex rel. Lester E. Cox Med. Ctr. v. Keet, 678 S.W.2d 813 (Mo. 1984) (redacted medical records of injured patients treated at defendant medical center discoverable by malpractice plaintiff whose husband died after being similarly treated); Tanzi v. St. Joseph Hosp., 651 A.2d 1244 (R.I.1994) (patients' emergency room treatment records held discoverable provided personal identification information redacted). See also Audrey W. Collins, Discovery, in Medical Malpractice Action, of Names and Medical Records of Other Patients to Whom Defendant has Given Treatment Similar to that Allegedly Injuring Plaintiff, 66 A.L.R.5th 591, 1999 WL 149793 (1999) (citing these and other cases similarly holding).
¶ 6 We do not disagree with those cases which, like Ziegler, hold that, under certain circumstances, medical records that may be privileged by statute may be discoverable nonetheless. In those cases, however, the records related to medical diagnoses and treatment of a physical nature. In such cases, the redaction of the non-parties' identification information from the medical records rendered the information fungible and virtually impossible to connect to any particular patient. Heart patients who have had pacemakers implanted, Ziegler, or patients who have had epidural catheters inserted, Gasiorowski, are intrinsically and fundamentally distinguishable from mental health patients. The records the respondent judge ordered disclosed detail the diagnoses of and treatment for mental illnesses, records which necessarily describe in detail the patients' thoughts, actions, fears, and mental health history. Mental health patients, perhaps more than any other medical patient, must be assured that their communications with those providing their treatment will be held in the strictest confidence. That assurance is essential for a patient's treatment. And, because of the unfortunate societal stigma attached to mental illness, the need for confidentiality is even more crucial. The often already fragile mental health patient should not be burdened with the additional concern that his or her confidential communications may be disclosed, potentially compromising treatment. In those cases in which disclosure of redacted medical records of non-party patients has been permitted, concern for confidentiality and treatment were not as interwoven as they are here, nor does it appear that the risk of societal stigmatization, where any, was as pronounced. Cf. Ex parte Mack, 461 So.2d 799 (Ala.1984) (disclosure of other patients who had abortions same day as plaintiff and of those present during her counseling sessions could be embarrassing or harmful to them and would *128 violate their rights to privacy and confidentiality).
¶ 7 This case does not present us with the question of whether mental health records of non-parties must be produced where the trial court is assured that the records could be redacted to avoid any possibility that the patients could later be identified. It is clear in this case that such redaction was not contemplated by the respondent judge. Indeed, the judge anticipated that some of the non-parties would be deposed and would testify at trial. One non-party patient petitioner, "C.B.," has already been deposed in this case over objection, and any redaction of her records would not prevent identification of her because her deposition testimony could readily be matched to the produced records. Similarly, removing the patients' names from the records offers no protection where Roe alleges that she participated in group psychotherapy sessions with others with similar diagnoses. Likely she, her counsel, or her expert would be able to identify other patients based on the specific, personalized details of the mental health patient's confidences revealed during therapeutic sessions[1] and contained in the redacted medical records. But, those patients had every right to rely on statutory guarantees of confidentiality and privacy. See Oslund v. United States, 128 F.R.D. 110, 115 (D.Minn.1989) (participants in a group therapy session "had an expectation that their participation in and disclosures to the group would remain confidential"); Parkson v. Central DuPage Hosp., 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140, 144 (1982) (non-party patients disclosed information "with an expectation of confidentiality" and whether redaction of their names and identifying numbers from records would protect their identity was "questionable at best").

Conclusion
¶ 8 Because of the likelihood that production of the medical records described in the respondent trial judge's order may lead to identification of the non-party patients, and because the nature of mental health records demands de minimus, if any, encroachment on the statutory protection of the patients' privacy, we find that the respondent's order compelling production of the records was an abuse of his discretion. Therefore, the judge's order of April 4, 2000, is vacated except for the portions denying Roe's Motion to Amend the Complaint and granting the Arizona Center for Disability Law leave to appear in the case.
¶ 9 Relief granted.
CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and JOSEPH W. HOWARD, Judge.
NOTES
[1] Any redaction to avoid such possibility of identification here presumably would result in emasculated, and perhaps incomprehensible, records which would be of no value to Roe in her litigation.