#27491-r-SLZ
**2016 S.D. 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STEVEN J. WIPF,                                    Plaintiff and Appellee,

    v.

TERRY ALTSTIEL, M.D.
and REGIONAL HEALTH
PHYSICIANS, INC.,                                  Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. PALMER PERCY
Judge

* * * *

BRAD J. LEE
GARY D. JENSEN of
Beardsley, Jensen & Lee Prof. LLC
Rapid City, South Dakota                           Attorneys for plaintiff
                                                   and appellee.


JEFFREY G. HURD
DANIEL DUFFY of
Bangs, McCullen, Butler,
  Foye & Simmons LLP
Rapid City, South Dakota                           Attorneys for defendants
                                                   and appellants.

* * * *

ARGUED ON
FEBRUARY 17, 2016
REASSIGNED ON
AUGUST 2, 2016
OPINION FILED **12/21/16**

#27491

ZINTER, Justice (on reassignment).

[¶1.] Steven J. Wipf sued Dr. Terry Altstiel and Regional Health Physicians Inc. (Appellants) for medical malpractice. Through discovery, Wipf sought access to operative notes and postoperative notes relating to follow-up care of some of Dr. Altstiel's patients who are not parties to this action. The circuit court ordered Appellants to partially redact and produce the redacted records, and they appealed. We reverse and remand for reconsideration.

*Facts and Procedural History*

[¶2.] On April 22, 2011, Dr. Altstiel performed a laparoscopic hernia repair on Wipf at the Spearfish Regional Surgery Center (SRSC). The purpose of the surgery was to repair a tear or opening in Wipf's abdominal wall. Dr. Altstiel completed the surgery around 10:00 a.m., and Wipf was discharged around 4:00 p.m. Wipf was advised to notify his doctor if he experienced any unusual pain or developed a fever.

[¶3.] The following day, Wipf contacted SRSC to report that he was experiencing pain in his upper back, he had a fever, and he had been unable to have a bowel movement since prior to surgery. SRSC advised Wipf to go to the emergency room, and Wipf went to the Sturgis Regional Hospital (SRH). The emergency-department doctor found that Wipf did not have a fever or bowel blockage. Although Wipf's primary complaint was pain, he had not been taking his prescribed pain medication. Wipf was advised to take the pain medication and return if he felt that his condition worsened.

[¶4.]     Wipf returned to SRH's emergency department three nights later. He reported that he felt nauseous and that he still had been unable to have a bowel movement. Wipf was admitted to the hospital for observation, and he underwent a CT scan of his abdomen the following morning. The scan revealed fluid and air in the abdomen near an opening in the mid-small bowel. SRH transferred Wipf to the Rapid City Regional Hospital, where he underwent surgery with Dr. Larry Wehrkamp. Dr. Wehrkamp discovered two perforations in the small bowel that measured approximately two centimeters in size.

[¶5.]     Wipf later sued Appellants for malpractice. Wipf alleged that Dr. Altstiel accidentally perforated Wipf's small bowel during the laparoscopic hernia repair. Wipf also alleged that Dr. Altstiel failed to inspect and find the perforations before completing the surgery. Dr. Altstiel contended that he inspected Wipf's bowel prior to concluding the surgery and that no perforations were present. Wipf, however, pointed out that Dr. Altstiel did not note the claimed inspection in his operative note. Dr. Altstiel's expert also testified that for him to opine that Dr. Altstiel violated the standard of care, Wipf would have to show an unacceptably high complication rate in similar procedures with different patients. Because Dr. Altstiel estimated that he had conducted approximately 955 laparoscopic hernia repairs over thirteen years, and because Dr. Altstiel's expert testified in his deposition that it would be relevant to consider the past 200-300 procedures, Wipf requested production of Dr. Altstiel's operative notes involving this procedure for the prior five years, including medical reports or notes that related to follow-up care. The circuit court found those records relevant, ordered the doctor and clinic to

"redact from these records the personal identifiers for each patient," and ordered them to produce the remaining redacted information.[1] We subsequently granted Dr. Altstiel's petition for an intermediate appeal.

[¶6.] For purposes of appeal, Dr. Altstiel concedes that the redacted information is relevant.[2] However, he claims that the physician-patient privilege in SDCL 19-19-503(b) protects such anonymous, nonidentifying information from discovery. This is a question of first impression in this jurisdiction. If the privilege applies, then according to Dr. Altstiel, liability for malpractice will depend solely on his testimony of his unverifiable estimate of his own complication rate. Further, the inference to be drawn from Dr. Altstiel's failure to note an inspection of the bowel in his operative note will depend solely on Dr. Altstiel's explanation.

---

1. The circuit court required redaction by Dr. Altstiel and the clinic before disclosing the information. The court's order provided:

> Defendant shall provide to Plaintiff copies of all the medical records (beginning with the operative note and including all medical reports or notes generated for the next 30 days that in any way related to care for, or recovery from, the laparoscopic hernia repair surgery) for each patient on which Dr. Terry L. Altstiel performed laparoscopic hernia repair surgery during the years 2009 through 2013;

> IT IS FURTHER ORDERED that Defendants shall redact from those records the personal identifiers for each patient, including the patient's name, address, phone number, date of birth, and social security number, prior to disclosing these records to Plaintiff . . . .

2. The records sought in this case would not be discoverable in many malpractice cases because they would not be relevant. However, in this case, Dr. Altstiel's expert made the information relevant in his deposition testimony, and Dr. Altstiel does not contest the court's relevancy determination for purposes of this appeal.

*Decision*

[¶7.]     The physician-patient privilege, codified in SDCL 19-19-503(b), protects a physician-patient's "confidential communications made for the purpose of diagnosis or treatment." But the language of the statute does not address information in a doctor's records that does not identify the patient and cannot be traced back to the patient. Additionally, unlike some jurisdictions that have passed medical information privacy acts or patient's rights legislation that more broadly protect medical information, *see* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 514.12[5][c] (Mark S. Brodin, ed., Matthew Bender 2d ed. 1998), the South Dakota Legislature has not done so.

[¶8.]     The text of SDCL 19-19-503 does not protect all of a physician's "medical records." Rather, it only protects physician-patient "confidential communications" contained in medical records. SDCL 19-19-503(b). Because the text of SDCL 19-19-503(b) fails to address either the disclosure of anonymous, nonidentifying information or whether nonidentifying information is a physician-patient "confidential communication," it is informative to consider the cases from other jurisdictions that have similar rules protecting physician-patient "confidential communications." With almost unanimity, the courts applying analogous rules protecting physician-patient "confidential communications" hold that when adequate safeguards ensure the anonymity of the patient, relevant, nonidentifying information is not privileged.[3] *See Snibbe v. Superior Court*, 168 Cal. Rptr. 3d 548,

---

3.     The Chief Justice's dissent contends that the plain text of SDCL 19-19-503 is broad enough to cover all medical records, whether identifying or

(continued . . .)

554, 556-57 (Cal. Ct. App. 2014) (interpreting California's privilege rule, Cal. Evid. Code § 994 (West 2016), which protected "confidential communication[s] between patient and physician"); *Bennett v. Fieser*, 152 F.R.D. 641, 642-44 (D. Kan. 1994) (interpreting Kansas's privilege rule, Kan. Stat. Ann. § 60-427 (West 2012), which protected "confidential communication[s] between patient and physician"); *Osterman v. Ehrenworth*, 256 A.2d 123, 129 (N.J. Super. Ct. Law Div. 1969) (interpreting New Jersey's privilege rule, N.J. Stat. Ann. § 2A:84A-22.2 (West 1968), which protected "a confidential communication between patient and physician"); *Staley v. N. Utah Healthcare Corp.*, 230 P.3d 1007, 1010-11 (Utah 2010) (interpreting Utah's privilege rule, Utah R. Evid. 506 (West 1994), which protected "information that is communicated in confidence to a physician or mental health therapist").

---

(. . . continued)

nonidentifying. C.J.'s Dissent ¶¶ 18, 20. Both dissenting opinions point out that we have applied the privilege in SDCL 19-19-503 to a doctor's treatment *records*. *See, e.g., Shamburger v. Behrens*, 380 N.W.2d 659, 662 (S.D. 1986) (holding that a hospital's records of a patient's treatment for alcoholism were "*protected* by the [physician-patient] privilege" (emphasis added) and were therefore not discoverable in an action attempting to prove that the patient had a problem with alcohol). However, the dissent's cases such as *Shamburger* do not state that a physician's *records* are "confidential communications" *per se*; and the text of the rule does not mention medical records—it only protects *physician-patient* confidential communications. SDCL 19-19-503. The dispositive question is whether anonymous, nonidentifying information—i.e., a record without a patient—of a doctor's complication rate is a physician-patient confidential communication. Further, if such information is not privileged, it does not matter who may invoke the privilege because there is no patient to invoke it for, *contra* J. Severson's dissent ¶ 40, nor does it amount to creating a new exception to the privilege, *contra* C.J. Gilbertson's dissent ¶ 16; J. Severson's dissent ¶ 41.

[¶9.]     Additionally, even courts interpreting broader privilege rules protecting "any communication" or "any information" hold that relevant, adequately protected, nonidentifying information is not privileged. *See Ziegler v. Superior Court*, 656 P.2d 1251, 1254-56 (Ariz. Ct. App. 1982) (interpreting Arizona's privilege rule, Ariz. Rev. Stat. Ann. § 12-2235 (West 1974), which protected "any communication made by [a] patient with reference to any physical or mental disease or disorder . . . or as to any such knowledge obtained by personal examination of the patient"); *Cmty. Hosp. Ass'n v. District Court*, 570 P.2d 243, 244-45 (Colo. 1977); (interpreting Colorado's privilege rule, Colo. Rev. Stat. Ann. § 13-90-107(d) (West 1973), which protected "any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient"); *Fischer v. Hartford Hosp.*, 31 Conn. L. Rptr. 291 (Conn. Super. Ct. 2002) (interpreting Connecticut's privilege rule, Conn. Gen. Stat. Ann. § 52-146o (West 1996), which protected "any communication made to" a patient or "any information obtained by" a patient); *Tomczak v. Ingalls Mem'l Hosp.*, 834 N.E.2d 549, 552-555 (Ill. App. Ct. 2005) (interpreting Illinois's privilege rule, 735 Ill. Comp. Stat. Ann. 5/8-802 (West 2002), which protected "any information [the physician] may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient"); *Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1360-62 (Ind. 1992) (interpreting Indiana's privilege rule, Ind. Code § 34-1-14-5 (1991) (transferred to Ind. Code § 34-46-3-1 (West 2016)), which protected "matters communicated to [physicians] by patients"); *Baptist Mem'l Hosp. v. Johnson*, 754 So. 2d 1165, 1169-71 (Miss. 2000) (interpreting Mississippi's

privilege rule, Miss. Code. Ann. § 13-1-21 (West 2016), which protected "All

communications made to a physician"); *State ex rel. Wilfong v. Schaeperkoetter*, 933

S.W.2d 407, 409-10 (Mo. 1996) (interpreting Missouri's privilege rule, Mo. Ann.

Stat. § 491.060(5) (1994), which protected "any information which [the physician]

may have acquired from any patient while attending [the patient] in a professional

character").[4]

[¶10.]     This type of anonymous, nonidentifying information is not protected by

the physician-patient privilege because there is *no patient* once the information is

redacted.  As the Utah Supreme Court thoughtfully explained:

> [The physician-patient privilege] shields from disclosure certain
> information communicated between a physician or a mental
> health therapist and a patient, so long as the information "is
> communicated in confidence" and for the purpose of diagnosis
> and treatment of the patient.  Under [the physician-patient
> privilege], communicating information contemplates an
> exchange of information between a physician and a patient.  In
> short, to be operative, [the privilege] requires two actors—a

---

4.     The only cases that have concluded nonidentifying information may be
       privileged are inapposite.  For example, *Baker v. Oakwood Hospital Corp.*
       involved consideration of a broader statute prohibiting disclosure of "*any
       information* that the person has acquired in attending a patient."  608
       N.W.2d 823, 827-831 (Mich. Ct. App. 2000) (quoting Mich. Comp. Laws Ann.
       § 600.2157 (West 2016) (emphasis added)).  Two other courts relied on other
       legislative authority.  *See In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d
       797, 799 (Tex. App. 2001) ("[T]he Texas Health and Safety Code provides that
       all health care information found in hospital records is privileged and cannot
       be disclosed without authorization."); *Roe v. Planned Parenthood Sw. Ohio
       Region*, 912 N.E.2d 61, 70 (Ohio 2009) (citing *Hageman v. Sw. Gen. Health
       Ctr.*, 893 N.E.2d 153, 156 (Ohio 2008)) (determining that medical records
       were privileged based on HIPAA and the Ohio Public Records Act before
       going on to hold the redacted records were privileged).  And one case involved
       a situation where it was doubtful whether the identities of third-party
       patients could be kept confidential.  *See Parkson v. Cent. DuPage Hosp.*, 435
       N.E.2d 140, 143-44 (Ill. App. Ct. 1982).

patient and a physician, and an exchange of confidential information concerning a particular subject matter—diagnosis and treatment. All of these elements must be present for the privilege to be activated; mere descriptions of diagnoses and treatments that make no reference to a patient are ineligible for protection under [the privilege]. Indeed, the presence of identifying information and the orders of the court are what make the information privileged. Without an identified individual connected to a diagnosis, the diagnosis contains nothing more than medical terminology. The United States District Court for the Southern District of New York cogently explained this concept:

> that any record containing a diagnosis, an evaluation or a treatment, even if it cannot be connected with a patient, is privileged—is not self evident . . . . [O]ne might argue, as a matter of theory, that the use of the disjunctive in the [rule] means that any document containing a patient's identity or diagnosis or evaluation or treatment is privileged . . . . Such a construction, however, would lead to preposterous results. A scrap of paper upon which a physician had jotted down a patient's name, or wrote only the word "indigestion" (a diagnosis) or "aspirin" (a treatment) or "malingering" (an evaluation) would, or at least could, be privileged. The . . . rulemakers could not possibly have so intended.

*Staley*, 230 P.3d at 1011 (quoting *In re Rezulin Prods. Liab. Litig.*, 178 F. Supp. 2d 412, 414 (S.D.N.Y. 2001) (citations omitted)). In accordance with the rationale of the Utah Supreme Court and the almost unanimous view of other courts,[5] we too hold that anonymous, nonidentifying medical information is not privileged *per se*.

---

5.    The dissenting opinions contend that we should not follow the virtually unanimous rule because those cases eschew a "plain text" analysis of the language. *See* C.J. Gilbertson's dissent ¶ 21; J. Severson's dissent ¶¶ 38-39. However, there is no dispute that SDCL 19-19-503 does not address anonymous, nonidentifying information that has no connection to any particular patient. That alone should end any "plain text" argument. But additionally, although the precise issue in this case has been repeatedly litigated in other courts, courts do not agree with the dissents' view that the "plain meaning" of the words physician-patient "confidential communication" (or analogous words) in any physician-patient privilege rule includes

(continued . . .)

-8-

[¶11.] To ensure that privileged information is not disclosed, the circuit court must ensure that the information to be disclosed is nonidentifying. No third-party patient can be associated with the information. Additional safeguards such as protective orders should also be considered. The cases considering patient anonymity have required such things as: redaction of all personal information as well as any information that would tend to identify a patient; sealing documents; prohibiting the attorneys and parties from attempting to learn the identities of the patients or making contact with them; and prohibiting any person that viewed the information from disclosing any of the information. *See Ziegler*, 656 P.2d at 1254-55; *Cmty. Hosp. Ass'n*, 570 P.2d at 244; *Fieser*, 152 F.R.D. at 643-44. Courts have also required attorneys to sign protective orders, *see Trueblood*, 600 N.E.2d at 1360-62, and limited disclosure to expert witnesses, *see Staley*, 230 P.3d at 1009.

_____

(. . . continued)
     information that cannot be traced to a patient and thus contains nothing more than medical terminology (such as a doctor's method of practice and complication rate). *See* cases cited *supra* ¶¶ 8-9 (finding no privilege); *see also Baker*, 608 N.W.2d at 830 (finding privilege applied because "*any* information" is broad enough to protect nonidentifying information) (emphasis added); *Roe*, 912 N.E.2d at 70-71 (no plain meaning analysis); *Parkson*, 435 N.E.2d at 144 (no plain meaning analysis). Moreover, the courts finding that the privilege does not apply have done so despite the fact that they employ the same rules of interpretation that we do: they first look to the plain meaning of the text. *See Farris v. Advantage Capital Corp.*, 170 P.3d 250, 251 (Ariz. 2007); *People v. Castillolopez*, 371 P.3d 216, 219-20 (Cal. 2016); *Mulberger v. People*, 366 P.3d 143, 147 (Colo. 2016) (en banc); *Gould v. Freedom of Info. Comm'n*, 104 A.3d 727, 732-33 (Conn. 2014); *In re Marriage of Turk*, 12 N.E.3d 40, 44 (Ill. 2014); *State v. Ryce*, 368 P.3d 342, 349 (Kan. 2016); *Brown v. State*, 102 So. 3d 1087, 1089 (Miss. 2012); *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 735 (Mo. 2010) (en banc); *State v. Grate*, 106 A.3d 466, 473 (N.J. 2015); *State v. Steed*, 325 P.3d 87, 93 (Utah 2014).

[¶12.]     In this case, the circuit court required Dr. Altstiel to "redact the personal identifiers for each patient, including the patient's name, address, phone number, date of birth, and social security number." The court did not, however, require redaction of other information that could identify the patient, such as the patient's medical history or information regarding family members. There is also no indication that the court considered whether identification of the patient could occur because of the size of the community. This could be significant because as Dr. Altstiel points out, Sturgis and Meade Counties have small populations, which could lead to identification of a patient. *Cf. Staley*, 230 P.3d at 1013 (noting little chance of identification because the hospital at issue was one of several located in an area populated by approximately 900,000 people and also drew patients from neighboring states). Finally, the court did not issue a protective order. Accordingly, we reverse and remand for the circuit court to consider whether additional safeguards will ensure patient anonymity. If they will, the court must enter a protective order before disclosure.

[¶13.]     Reversed and remanded for further proceedings consistent with this opinion.[6]

[¶14.]     WILBUR and KERN, Justices, concur.

[¶15.]     GILBERTSON, Chief Justice, and SEVERSON, Justice, dissenting.

---

6.     In light of this disposition, we need not address the other arguments raised on appeal.

#27491

GILBERTSON, Chief Justice (dissenting).

[¶16.]      This case involves nothing more than a question of statutory construction.  However, the majority's decision today results in serious damage to patient privacy by judicially creating a redaction exception to SDCL 19-19-503, South Dakota's physician–patient privilege.[7]  In doing so, the majority relies on a number of decisions from other jurisdictions that analyze the purpose of their respective privileges rather than the plain meaning of those statutes.  Like the cases upon which it relies, the majority's result-oriented analysis overlooks the primary issue in this case: Whether the plain language of SDCL 19-19-503 applies to redacted patient records.  The majority devotes a single, cursory paragraph to this issue.  Because the plain language of SDCL 19-19-503 applies to the patient records at issue in this case, and because Wipf's remaining arguments are similarly incorrect, I respectfully dissent.

[¶17.]      ***1.       Analysis of South Dakota's physician–patient privilege***

[¶18.]      In determining whether SDCL 19-19-503 applies to redacted patient records, this Court must first examine the plain language of the statute.  *E.g., Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 10, 878 N.W.2d 406, 410.  Under South Dakota's physician–patient privilege, "[a] patient [may] refuse to disclose and [may] prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment . . . among himself, [his] physician," and other enumerated individuals.  SDCL 19-19-503(b).  "A communication is

---

7.      Prior to 2015, the physician–patient privilege was codified as SDCL 19-13-7 (Rule 503(b)).

-11-

'confidential' if not intended to be disclosed to third persons . . . ." SDCL 19-19-503(a)(4). This Court has explicitly and consistently held that a patient's medical records are confidential communications within the meaning of the physician–patient privilege. *See Shamburger v. Behrens*, 380 N.W.2d 659, 662 (S.D. 1986) ("[T]reatment records are also protected by the [physician–patient] privilege."); *Maynard v. Heeren*, 1997 S.D. 60, ¶¶ 7-15, 563 N.W.2d 830, 833-36 (applying physician–patient privilege and exceptions to psychological records of plaintiff–litigant), *abrogated on other grounds*, *Milstead v. Johnson*, 2016 S.D. 56, ¶¶ 34-35, 883 N.W.2d 725, 737-38; *State v. Stuck*, 434 N.W.2d 43, 53-54 (S.D. 1988) (applying physician–patient privilege and exceptions to victim's medical records); *People ex rel. D.K.*, 245 N.W.2d 644, 647-49 (S.D. 1976) (applying physician–patient privilege and exceptions to hospital records of infant).[8] Despite the majority's attempt to relabel the documents sought in this case as merely "information," the circuit court ordered the production of *medical records* belonging to *several hundred patients*—

---

8. Although the majority acknowledges that these cases apply the privilege to patient medical records, it nevertheless claims that these cases "do not state that a physician's *records* are 'confidential communications' *per se*; and the text of the rule does not mention medical records—it only protects *physician-patient* confidential communications." *Supra* ¶ 8 n.3. As noted above, we have explicitly held that "treatment records are . . . protected by the [physician–patient] privilege." *Shamburger*, 380 N.W.2d at 662. Yet, the privilege only applies to confidential communications. SDCL 19-19-503. Therefore, contrary to the majority's claim, *Shamburger* necessarily holds that patient medical records are confidential communications.

i.e., confidential communications—unrelated to this litigation.[9]  Therefore, as a

starting point, the subject of the circuit court's discovery order is privileged.

[¶19.]     In light of the foregoing, the onus is on the majority to demonstrate

how under the plain text of SDCL 19-19-503 a confidential communication (e.g., a

medical record, *see supra* ¶ 18) ceases to be either confidential or a communication

when redacted.  The majority fails to do so.  I can only assume that in the majority's

view, the removal of identifying information from a medical record renders what

was a "confidential communication" merely a "communication."  However, as noted

above, a communication is confidential "if not *intended to be disclosed* to third

persons[.]"  SDCL 19-19-503(a)(4) (emphasis added).  The word *intend* means "[t]o

have in mind a fixed purpose to reach a desired objective" or "to have as one's

purpose[.]"  *Black's Law Dictionary* (10th ed. 2014).  Thus, in order for redaction to

remove the "confidential" quality of a communication, redaction would have to

actually create a "fixed purpose" in the mind of the patient to disclose the

communication to a third party.  But passive assent is not active intent, so even if

hundreds of Dr. Altstiel's patients would passively accept the dissemination of their

redacted medical records (assuming they even find out about it), that is a far cry

from having a "fixed purpose" of providing their medical information to Wipf.

---

9.     The majority erroneously claims that "the dispositive question is whether
       anonymous, nonidentifying information . . . of a doctor's complication rate is a
       physician-patient confidential communication."  *Supra* ¶ 8 n.3.  This claim—
       like much of the majority's opinion—relies on the false premise that the
       circuit court merely ordered the production of "information" from *Dr. Altstiel's*
       records.  On the contrary, as Justice Severson correctly notes in his dissent,
       the court ordered Appellants to produce "*all the medical records . . . for each
       patient* on which Dr. Terry L. Altstiel performed laparoscopic hernia repair
       surgery during the years 2009 through 2013."  *Infra* ¶ 42 (emphasis added).

Therefore, *under the plain text of SDCL 19-19-503*, a medical record is confidential as long as the patient does not intend to disseminate it, regardless of whether it has been redacted.

[¶20.]     Instead of explaining how a patient medical record ceases to be a confidential communication under SDCL 19-19-503 when redacted, the majority merely observes that SDCL 19-19-503 "does not address the disclosure of anonymous, nonidentifying information[.]" *Supra* ¶ 8. According to the majority, this observation "alone should end any 'plain text' argument." *Supra* ¶ 10 n.5.[10] Yet, neither does SDCL 19-19-503 specifically "address the disclosure of [*identifying*] information[.]" Thus, the logical conclusion of the majority's argument is that the plain text of SDCL 19-19-503 will *never* control (because every communication necessarily is either identifying or nonidentifying and the statute does not specifically address either subcategory). The better view is that the plain text of a statute cannot be avoided by simply appending adjectives.[11] *See Pitt-Hart*, 2016 S.D. 33, ¶ 10 n.2, 878 N.W.2d at 410 n.2 ("When the [author of a statute] uses inclusive language indicating a broad range of conduct, it is not required to

---

10.   This argument simply assumes the conclusion it is meant to prove—that the content of the medical record is relevant to the application of the privilege.

11.   The majority's argument can be replicated by appending essentially any adjective. For example, SDCL 19-19-503 does not specifically address the disclosure of electronically recorded medical records or medical records generated on a Tuesday. Are we to conclude, as the majority's argument suggests, that such records consequently are not protected under the plain text of SDCL 19-19-503? Of course not. Such a conclusion is insupportable because like the content of the medical record, neither the format of the record nor the day of its creation is among the statutory requirements of SDCL 19-19-503.

anticipate and individually address each subdivision of that conduct a party [or a majority of this Court] might imagine."). Simply put, under the plain text of SDCL 19-19-503, a patient medical record is a confidential communication, regardless of the information it contains. Nothing in SDCL 19-19-503 supports the majority's frustration of this statutorily defined privilege by imposing a fourth prerequisite to its application—i.e., that the content of the communication be personally identifying.[12]

[¶21.] Despite the plain text of SDCL 19-19-503, the majority relies on a number of decisions from other jurisdictions holding that the disclosure of redacted medical records does not violate the purposes of their respective physician–patient privileges. *See supra* ¶¶ 8-10.[13] The majority claims that those decisions "employ

---

12. Although SDCL 19-19-503 originated as a court rule, this Court is not free to amend the statute at will. "It is not our task to revise or amend, via judicial opinions, statutes *or court rules*, or to 'liberally construe a statute *or court rule* . . . where such action would do violence to the *plain meaning* of the statute under construction.'" *Hannon v. Weber*, 2001 S.D. 146, ¶ 8, 638 N.W.2d 48, 50 (per curiam) (emphasis added) (quoting *Sudbeck v. Dale Elec., Inc.*, 519 N.W.2d 63, 67 (S.D. 1994)). Moreover, while the current version of the privilege may have originated as a court rule, the basis for the privilege is legislative and can be traced back to § 499(3) of Dakota Territory's 1877 Revised Code of Civil Procedure.

13. The majority claims the rule adhered to in its selection of cases is "the virtually unanimous rule" and that "courts do not agree with the dissents' view that the 'plain meaning' of the words physician-patient 'confidential communication' (or analogous words) in any physician-patient privilege rule includes information that cannot be traced to a patient[.]" *Supra* ¶ 10 n.5. These claims are contradicted by the majority's note four. As the majority acknowledges, a number of other jurisdictions have held that the disclosure of redacted medical records *does* violate their respective privileges. *See Glassman v. St. Joseph Hosp.*, 631 N.E.2d 1186, 1198 (Ill. App. Ct. 1994); *Johnson v. Detroit Med. Ctr.*, 804 N.W.2d 754, 756 (Mich. Ct. App. 2010) ("The [physician–patient] privilege prohibits the disclosure of "'any

(continued . . .)

the same rules of interpretation that we do[.]" *Supra* ¶ 10 n.5. While some of those

decisions purport to conduct a plain-text analysis, they do so only to the same

extent that the majority does so today—which when reduced to its essence, is not at

all. *None* of the decisions cited by the majority actually conducts a plain-text

analysis of their respective privileges. Indeed, half of those decisions do not even

quote the text of their corresponding statutes. *See Bennett ex rel. Bennett v. Fieser*,

152 F.R.D. 641 (D. Kan. 1994); *Ziegler v. Superior Court*, 656 P.2d 1251 (Ariz. Ct.

App. 1982); *Snibbe v. Superior Court*, 168 Cal. Rptr. 3d 548 (Cal. Ct. App. 2014);

*Fischer v. Hartford Hosp.*, 31 Conn. L. Rptr. 291 (Conn. Super. Ct. 2002); *State ex

rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407 (Mo. 1996) (en banc).[14] Therefore,

these decisions are incongruous with this Court's firmly established rules of

statutory construction: "The intent of a statute is determined from what [its author]

said, rather than what the courts think it should have said, and *the court must

confine itself to the language used*." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 7,

---

(. . . continued)
    information" acquired under the requisite circumstances,' even if the patient's identity is redacted." (quoting *Baker v. Oakwood Hosp. Corp.*, 608 N.W.2d 823, 830 (Mich. Ct. App. 2000))); *Roe v. Planned Parenthood Sw. Ohio Region*, 912 N.E.2d 61, 72 (Ohio 2009) ("Redaction of personal, identifying information does not remove the privileged status of the records."); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797, 800 (Tex. App. 2001) ("[R]edaction of identifying information from nonparty medical records does not defeat the medical records privilege.").

14.     Another decision relied on by the majority is based on a balancing test pitting the third party's privacy interest against the need to disclose the privileged information, *see Baptist Mem'l Hosp.-Union Cty. v. Johnson*, 754 So. 2d 1165, 1171 (Miss. 2000), implying that even the disclosure of records containing personally identifying information might be discoverable under certain circumstances.

859 N.W.2d 618, 621 (emphasis added) (quoting *City of Rapid City v. Estes*, 2011 S.D. 75, ¶ 12, 805 N.W.2d 714, 718); *Hannon v. Weber*, 2001 S.D. 146, ¶ 8, 638 N.W.2d 48, 50 (per curiam) (holding requirement of plain-text analysis applies equally to all statutes, whether authored by the Legislature or this Court).

[¶22.]     The rule of the foregoing decisions should be rejected even if we ignore the plain text of SDCL 19-19-503.  The cases relied on by the majority essentially conclude that disclosing third-party medical records does not violate the physician–patient privilege if the patient's identity is not disclosed.  However, South Dakota's physician–patient privilege is not merely concerned with a patient's privacy.  It "expresses a long-standing policy to encourage uninhibited communication between a physician and his patient.  It is a privilege that seeks to insure the free flow of health care, absent *any* fears on the patient's part that *anything* he says might later be used against him." *Maynard,* 1997 S.D. 60, ¶ 8, 563 N.W.2d at 833 (emphasis added) (quoting *D.K.*, 245 N.W.2d at 648).[15]  Whether physician–patient communication is inhibited necessarily depends on the patient's subjective assessment of the relative security of his or her identity.  Thus, the purpose of the privilege may be undermined when a patient fears identification through the disclosure of his medical records—*even if no such identification actually occurs.*

---

15.    As noted above, South Dakota's physician–patient privilege may be traced back to § 499(3) of Dakota Territory's 1877 Revised Code of Civil Procedure. "In promulgating Section 499, the legislature declared: 'There are particular relations in which it is the policy of the law to encourage confidence *and to preserve it inviolate*[.]'" *Hogue v. Massa*, 80 S.D. 319, 323, 123 N.W.2d 131, 133 (1963) (emphasis added).

#27491

[¶23.]     Even under the new exception created by the majority, the facts of this case do not warrant disclosure. The probability that a patient will be identified could depend on a number of factors including the volume of data disclosed, the rarity of the patient's particular combination of medical conditions,[16] the number of treating physicians in the area, and relatedly, the population base served by those physicians. In *Staley v. Northern Utah Healthcare Corp.*, 230 P.3d 1007 (Utah 2010), for example, the hospital at issue was one of several located in an area populated by approximately 900,000 people in addition to patients from neighboring states. *Id.* at 1013. In contrast, Sturgis has a population of approximately 6,700. The population of Meade County, in which Sturgis is located, has a total population of only approximately 27,000.[17] So even if it is unlikely that a third-party patient in Salt Lake County, Utah, will be identified by his or her redacted medical records, the probability of identifying a similar patient in Sturgis, South Dakota, is much greater. As the majority correctly points out, the circuit court's order in this case does little to protect against identification by the uniqueness of a patient's medical history.

---

16.    The majority remands "for the circuit court to consider whether additional safeguards will ensure patient anonymity." *Supra* ¶ 12. Appellants indicated in their briefs to this Court that Wipf's discovery request involves the medical records of potentially hundreds of third-party patients. The circuit court will be required to individually review each record sought on a patient-by-patient basis. The irony is that in resisting the disclosure of their medical records, some of these third-party patients may actually be forced to divulge even more medical information than was requested in order to prove a unique medical "footprint."

17.    This census data was obtained from the U.S. Census Bureau, http://www.census.gov/quickfacts/table/PST045215/4662100,46093,00 (last visited December 20, 2016).

[¶24.]     The damage done by the majority today to the privacy interests of South Dakotans is not limited to those who seek medical care. The phrase *confidential communication* is used throughout SDCL chapter 19-19 to define a number of different privileges. In addition to the physician–patient privilege, this phrase is used to define the lawyer–client privilege (SDCL 19-19-502), the spousal privilege (SDCL 19-19-504), the religious privilege (SDCL 19-19-505), and the public-officer privilege (SDCL 19-19-508). Under the majority's decision today, arguably a communication between an attorney and her client is now discoverable, as is the confession of a penitent made in confidence to a clergyman, if a third party can convince a judge that the identity of the communicator will not be discernible by such disclosure. Little is gained in this case by placing at risk the privacy of anyone who seeks medical care, legal advice, or spiritual guidance in South Dakota—*Dr. Altstiel already provided the information Wipf ostensibly seeks in this case.*[18] While little is gained, much is lost. Will this decision force the citizens of this state to seek medical treatment outside the boundaries of this state to protect and maintain the privacy of their medical records? As Justice Brandeis observed (and the United States Supreme Court has repeatedly held): "[T]he right to be let alone [is] the most comprehensive of rights and the right most valued by civilized [persons]." *Olmstead v. United States*, 277 U.S. 438, 478, 48 S. Ct. 564, 572, 72 L. Ed. 944 (1928)

---

18.    In Dr. Altstiel's responses to Wipf's first set of interrogatories, Dr. Altstiel stated that he has practiced medicine for 33 years, that he performed approximately 950 hernia repairs between April 2001 and July 2013, and that only two of those procedures (including Wipf's case) resulted in a perforated bowel.

#27491

(Brandeis, J., dissenting), *abrogated on other grounds*, *Katz v. United States*,

389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

[¶25.]       To summarize, this Court's past decisions firmly establish that patient

medical records are confidential communications within the meaning of SDCL 19-

19-503.  In order for redaction to remove the confidentiality of a medical record, it

must create an intent—i.e., a fixed purpose—in the mind of the patient to actually

disclose his or her medical information to a third person.  The majority avoids this

plain-text analysis in order to subscribe to the purpose-driven analysis of

extrajurisdictional decisions that also avoid plain-text analysis.  In doing so, the

majority bypasses a fundamental rule of statutory construction and improperly

adds another prerequisite to application of the privilege.  Additionally, the majority

fails to address the dual purpose of South Dakota's physician–patient privilege:

protecting the patient's privacy *and* encouraging uninhibited communication

between patient and physician.  Finally, the majority fails to address the effect its

decision would have on several other privileges, including the attorney–client

privilege and the clergy–penitent privilege.  For these reasons, I respectfully

dissent.

[¶26.]       *2.        Wipf's additional arguments*

[¶27.]       Because the majority creates a redacted-patient-records exception to

SDCL 19-19-503, it does not address Wipf's additional arguments for permitting

discovery.  Wipf contends that the plain meaning of SDCL 19-19-503 is

unreasonable because according to Wipf, it violates public policy.  However, he does

-20-

not cite any supporting authorities, and his argument on this point consists almost entirely of rhetorical questions. He asks:

> If Altstiel's interpretation is adopted, how could patients injured by the negligence of their doctor ever show that doctor is incompetent to perform a procedure if the patient cannot discover the results of other procedures? For example, if a doctor consistently performed a medical procedure incorrectly, the evidence from those other procedures showing the doctor violated the standard of care would be vital.

Yet, SDCL 19-19-503 also "expresses a long-standing policy to encourage uninhibited communication between a physician and his patient." *Maynard*, 1997 S.D. 60, ¶ 8, 563 N.W.2d at 833 (quoting *D.K.*, 245 N.W.2d at 648). Thus, Wipf asks this Court to balance two competing public policies and decide which is more important. However, it is well settled that "legislatures, and not the courts, are the proper place to determine the state's public policy." *Wegleitner v. Sattler*, 1998 S.D. 88, ¶ 25, 582 N.W.2d 688, 696. Therefore, the decision whether to subordinate the physician–patient privilege to other policy concerns must be decided by the Legislature and not this Court.

[¶28.] Finally, Wipf essentially argues that HIPAA categorically "preempts [s]tate privilege laws that offer protection to de-identified medical records." Wipf relies solely on *In re Zyprexa Products Liability Litigation*, 254 F.R.D. 50 (E.D.N.Y. 2008). In that case, several states sought "damages, including reimbursement for Medicaid payments, stemming from the alleged unlawful marketing of Zyprexa, an atypical anti-psychotic drug manufactured by [Eli Lilly & Company]." *Id.* at 51. The cases were removed to federal courts and consolidated. *Id.* "As part of its discovery demands, Lilly [sought] a sampling of medical records for Medicaid patients who used Zyprexa, as well as records for patients who took other atypical

anti-psychotic drugs during the relevant time period." *Id.* "[T]he States argue[d] that their respective physician–patient privilege laws prohibit[ed] discovery of the patient medical records." *Id.* at 52. After determining that each of the cases involved federal questions, the court held "that de-identified health information is not protected under HIPAA, and that, to the extent state privilege laws offer protection to de-identified medical records, HIPAA preempts those laws." *Id.* at 54.

[¶29.]     Although the *Zyprexa* court's conclusion seems to support Wipf's argument that HIPAA preempts South Dakota's physician–patient privilege, this conclusion is difficult to reconcile with the provisions of HIPAA itself, as well as with the conclusion of the United States Court of Appeals for the Seventh Circuit in *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004). That case involved "a subpoena commanding Northwestern Memorial Hospital in Chicago to produce the medical records of certain patients [who had undergone] late-term abortions at the hospital using the controversial method known variously as 'D & X' (dilation and extraction) and 'intact D & E' (dilation and evacuation)." *Id.* at 924. The government sought the records for use in a lawsuit challenging the constitutionality of the Partial-Birth Abortion Ban Act of 2003, *id.*, and therefore the case involved a federal question. The district court held that HIPAA supported application of Illinois's physician–patient privilege and quashed the subpoena, and the government appealed. *Id.* at 925.

[¶30.]     On appeal, the Seventh Circuit rejected the district court's application of state-law privilege to a federal-question suit. *Id.* However, the court explicitly stated that a state "is free to enforce its more stringent medical-records privilege . . .

in suits in state court to enforce state law[.]" *Id.* The court concluded that HIPAA "should be understood to . . . create a procedure for obtaining authority to use medical records in litigation. Whether the records are actually admissible in evidence will depend among other things on whether they are privileged." *Id.* at 925-26. Unlike *Northwestern Memorial Hospital* and *Zyprexa*, the present case does not involve a federal question—Wipf's malpractice claim against Appellants is purely a matter of South Dakota's negligence law. Therefore, under *Northwestern Memorial Hospital*, HIPAA does not categorically preempt state privilege laws, and further analysis is necessary to determine whether South Dakota's physician–patient privilege is preempted in this case.

[¶31.] Congress passed HIPAA in 1996 and charged the Secretary of the Department of Health and Human Services (the Secretary) to produce a regulatory scheme to implement the Act. Among other things, HIPAA and the rules promulgated pursuant thereto produced the Privacy Rule, which governs the use and disclosure of protected health information by covered entities. 45 C.F.R. § 164.502(a) (2015). HIPAA also includes a preemption provision:

> [A] provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d-1 through 1320d-3 of this title, shall supersede any contrary provision of State law, including a provision of State law that requires medical or health plan records (including billing information) to be maintained or transmitted in written rather than electronic form.

42 U.S.C.A. § 1320d-7(a)(1) (Westlaw through Pub. L. No. 114-248); 45 C.F.R. § 160.203. However, there are several exceptions to this general preemption rule. 42 U.S.C.A. § 1320d-7(a)(2); 45 C.F.R. § 160.203. Notably, HIPAA does not preempt a contrary state law if it "relates to the privacy of individually identifiable health

information and is more stringent than a standard, requirement, or implementation specification adopted under [the Privacy Rule]." 45 C.F.R. § 160.203(b).

[¶32.] In arguing for application of South Dakota's physician–patient privilege, Appellants argue that the "more stringent" exception applies. This argument, however, skips a crucial analytical step: determining whether the state provision is contrary to HIPAA in the first place. As noted above, HIPAA preempts only contrary state laws. *Id.* § 160.203; *see also* Standards for Privacy of Individually Identifiable Health Information, 64 Fed. Reg. 59,918, 59,996 (proposed Nov. 3, 1999) (to be codified at 45 C.F.R. pts. 160-64) ("The term 'contrary' . . . is a precondition for any preemption analysis . . . ."), 1999 WL 990734. The term *contrary* has a specific meaning under HIPAA:

> Contrary, when used to compare a provision of State law to a standard, requirement, or implementation specification adopted under this subchapter, means:
>
> > (1) A covered entity or business associate would find it impossible to comply with both the State and Federal requirements; or
> >
> > (2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of part C of title XI of the Act, section 264 of Public Law 104–191, or sections 13400–13424 of Public Law 111–5, as applicable.

45 C.F.R. § 160.202. Therefore, a state law is not contrary to HIPAA—or preempted thereby—unless one of these definitions is met.

[¶33.] To determine whether it is impossible to comply with both state and federal requirements, it is necessary to compare what is required under both regulatory schemes. As explained above, South Dakota's physician–patient privilege generally prohibits discovery of redacted, third-party medical records.

Therefore, the only way that it would be impossible to comply with both state and federal requirements is if HIPAA requires the disclosure of redacted, third-party medical records in this case. The Privacy Rule requires a covered entity to disclose protected health information in only two scenarios: (1) when requested, under certain circumstances, by the individual to whom the information pertains; or (2) when required by the Secretary "to investigate or determine the covered entity's compliance with [the Privacy Rule]." *Id.* § 164.502(a)(2). All other uses or disclosures of protected health information authorized by HIPAA are permissive rather than mandatory. *Id.* § 164.502(a)(1). The present case does not fit within either of these two mandatory scenarios. Even if HIPAA *authorizes* Appellants to disclose the information Wipf seeks, HIPAA does not *require* that Appellants do so. Therefore, in this case, nondisclosure complies with both HIPAA and South Dakota's physician–patient privilege. Consequently, the privilege is not preempted under the impossibility test.

[¶34.] Neither is South Dakota's physician–patient privilege an obstacle to HIPAA's objectives. In remarking on the Privacy Rule, the Department has said: "In general, the rule that we are proposing would create a federal floor of privacy protection, but would not supercede [sic] other applicable law that provide[s] greater protection to the confidentiality of health information." Standards for Privacy of Individually Identifiable Health Information, 64 Fed. Reg. at 59,926. This statement is consistent with the operation of the Privacy Rule's preemption provision. *See* 45 C.F.R. § 160.203(b) (preserving contrary state law when the law would provide greater protection than HIPAA). The plain text of SDCL 19-19-503

certainly furthers the objective of increasing protection for an individual's medical privacy by restricting a third party's access to the individual's records beyond the restrictions imposed by HIPAA. Wipf makes no argument to the contrary. Therefore, South Dakota's physician–patient privilege is not an obstacle to HIPAA's objectives. Because neither definition of the term *contrary* is met, the privilege is not preempted by HIPAA.

## Conclusion

[¶35.]     The plain language of South Dakota's physician–patient privilege indicates it generally applies to any communication between a patient and his or her physicians that is made for the purpose of diagnosis or treatment and not intended to be disclosed to a third party. We have expressly held that a patient medical record is a confidential communication within the meaning of SDCL 19-19-503. The application of SDCL 19-19-503 is not limited by the content of the communication. Consequently, the privilege bars discovery of any qualifying communication regardless of its content—i.e., even if the patient's personal information has been removed. At this point, "[a]ny [redacted-records] exception to the physician-patient privilege is a matter for the [Legislature] to address." *Roe v. Planned Parenthood Sw. Ohio Region*, 912 N.E.2d 61, 71 (Ohio 2009); *see also Pitt-Hart*, 2016 S.D. 33, ¶ 10 n.2, 878 N.W.2d at 410 n.2. Therefore, I would reverse.

[¶36.]     SEVERSON, Justice, joins this dissent.

#27491

SEVERSON, Justice (dissenting).

[¶37.]       I join Chief Justice Gilbertson's writing in its entirety, and I write separately to emphasize the Court's error today and to address the proper privilege analysis. Because today's majority erroneously construes the physician–patient privilege to include redacted medical records of nonparty patients, I respectfully dissent.

[¶38.]       This case does not solely involve "operative notes" as the Court would suggest. The records subject to production today are the medical records of patients who are not parties to this case. As Chief Justice Gilbertson points out, the physician–patient privilege includes a patient's treatment records. *See Shamburger*, 380 N.W.2d at 662. Furthermore, SDCL 19-19-503(b) clearly provides that the physician–patient privilege belongs to the patient. "A patient has a privilege to refuse to disclose *and to prevent any other person from disclosing* confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition . . . ." SDCL 19-19-503(b) (emphasis added). A physician is entitled to claim the privilege on behalf of the patient. SDCL 19-19-503(c). And a court has the independent duty to protect the privilege of persons not present or represented in a hearing. SDCL 19-2-9 provides:

> In all cases where it shall appear to the court that any person who is not present nor represented at the hearing should be protected in his right to have any communication made under the confidential relations provisions of §§ 19-19-502 to 19-19-505, inclusive, and 19-19-508, excluded, it shall be the duty of the court to make such objections and orders for such purpose as to the court may seem necessary.

[¶39.] Today's decision is contrary to the plain language of our statutes and the protection that those statutes provide for those who were not present or represented at the hearings in this case. The Court's decision results in the production of numerous patients' medical records, despite the privilege and privacy that those patients expect and are entitled to when they seek treatment from medical professionals.

[¶40.] Additionally, no exception applies in this case. We do not exempt communications subject to privilege merely because they may be relevant. *See Voorhees Cattle Co. v. Dakota Feeding Co.*, 2015 S.D. 68, ¶ 13, 868 N.W.2d 399, 406 (rejecting argument that communication subject to attorney–client privilege was waived because attorney's advice was relevant to show knowledge of attorney's clients). Certainly, the many nonparty patients whose medical records are at issue cannot be said to have waived the privilege; no waivers have been granted by the patients whose records are sought. *See* SDCL 19-2-3; SDCL 19-2-3.2; SDCL 19-19-510. Today's decision is also inconsistent with our rule concerning attorney–client privilege, which contains similar language. In those cases, we have made it clear that the client is the holder of the privilege and the privilege is only waived by the client or through the client's attorney. *See Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 18, 863 N.W.2d 540, 547. And "[t]he burden of establishing a waiver of the attorney-client privilege rests with the party asserting the claim of waiver[.]" *Id.* Rather than applying our precedent regarding privilege, this Court now exempts medical records from the privilege because they might be relevant and they can be

redacted to the point that they contain "mere . . . medical terminology." *See supra* ¶ 10 (quoting *Staley*, 230 P.3d at 1011).

[¶41.] Although this Court now uses redaction to create what it deems unprivileged "medical information," redaction is not an exception to the privilege. "On the contrary, redaction presumes a record is subject to disclosure." *Mercer v. S.D. Attorney Gen. Office*, 2015 S.D. 31, ¶ 18, 864 N.W.2d 299, 304 (rejecting argument that Attorney General must "consider redaction of records [that were not subject to disclosure] if redaction could protect the privacy interests at issue."). Here, the medical records are not subject to redaction because they are covered under the privilege and no exceptions exist. On this point, the Ohio Supreme Court has explained: "Redaction of personal information, however, does not divest the privileged status of confidential records. Redaction is merely a tool that a court may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure either by waiver or by an exception." *Roe*, 912 N.E.2d at 71. And other than a desire to prove their claim with additional, duplicative information, Plaintiffs have offered no reason, such as a competing right, which compels production of any information in the records. S*ee Milstead v. Smith*, 2016 S.D. 55, ¶ 32, 883 N.W.2d 711, 723 (allowing, under enumerated circumstances, production of protected law enforcement personnel records in light of a criminal defendant's constitutional right to proffer a defense); *Milstead v. Johnson*, 2016 S.D. 56, 883 N.W.2d 725 (holding the same); *see also Novotny v Sacred Heart Health Servs.*, 2016 S.D. 75, ___ N.W.2d. ___ (rejecting procedural

due process and open courts challenge to medical peer review privilege). Thus, redaction is an inappropriate approach in this case.

[¶42.] Because the plain language of South Dakota's physician–patient privilege protects the records at issue in this case, I would reverse the circuit court's order that Defendants produce "all the medical records . . . for each patient on which Dr. Terry L. Altstiel performed laparoscopic hernia repair surgery during the years 2009 through 2013."

[¶43.] GILBERTSON, Chief Justice, joins this dissent.